IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELENI C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 03549 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Eleni C.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 21, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 26, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On November 15, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since October 31, 2014 due to major depression, memory issues/memory loss, generalized anxiety disorder, panic disorder, bipolar disorder, focus problems, and untreatable attention deficit disorder. [Dkt. 18-1, R. at 68-69.] Plaintiff ultimately sought benefits for a closed period of March 15, 2015 through July 20, 2018. [R. 17, 19, 37.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 77, 92.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 7, 2018. [R. 32.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 34.] A vocational expert ("VE") also testified. [R. 43-44.] On March 12, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 26.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of March 15, 2015. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: depression and anxiety. [R. 17-18.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 18-19.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to *perform* work at all exertional levels,

2

except that Plaintiff could never climb ladders, ropes, or scaffolds, and was limited to working in non-hazardous environments (i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, or working with concentrated exposure to unguarded hazardous machinery). [R. 19-24.] The ALJ further limited Plaintiff to performing simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. [R. 19-24.] Plaintiff could not perform work which requires multitasking; could perform work requiring an average production pace; and was incapable of significantly above average or high variable production pace work. [R. 19-24.] Plaintiff could not perform work which requires significant self-direction; she could not perform work involving direct public service, in person or over the phone, though she could tolerate brief and superficial interaction with the public that was incidental to her primary job duties; she could not work in crowded, hectic environments or be required to interact with the public in situations that were intense or likely to be contentious; and she could tolerate brief and superficial interaction with supervisors and co-workers, but could not engage in tandem tasks. [R. 19-24.] At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a jewelry salesperson, catering coordinator, food and beverage coordinator, or convention service worker. [R. 24-25.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 25-26.]

**DISCUSSION**

I.    **Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept

4

as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.     Analysis**

Plaintiff argues that the ALJ committed reversible error by: (1) improperly inferring that Plaintiff could sustain full time work from the absence of a 12-month period in which the Plaintiff

5

did not work; and (2) improperly inferring that Plaintiff was able to sustain full-time, unskilled work from the fact that Plaintiff held a part-time, skilled job during portions of the relevant period.

### A. The ALJ Adequately Considered the Ebbs and Flows of Plaintiff's Symptoms

Plaintiff first argues that the ALJ improperly inferred from the fact that Plaintiff worked sporadically during the relevant period that Plaintiff could sustain a full-time job. According to Plaintiff, the evidence demonstrated that her symptoms ebbed and flowed, and that periods of improvement were always followed by serious exacerbations. Plaintiff argues that her periods of exacerbation would have rendered her unable to hold down a full-time job during the closed period.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While an ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability," an ALJ "need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, the Seventh Circuit has recognized that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ considered Plaintiff's waxing and waning symptoms (and indeed expressly noted that Plaintiff's condition waxed and waned, [R. 21]), and concluded that notwithstanding her exacerbations, Plaintiff was able to sustain full-time work during the closed period. The ALJ evaluated the record as a whole and provided a variety of reasons why he believed Plaintiff would be capable of performing full-time work subject to the limitations identified in the RFC, including that: Plaintiff showed good response to treatment and improved following exacerbations [R. 20];

that Plaintiff's GAF scores over time—as opposed to in a single instance—reflected no more than moderate symptoms and limitations, even as Plaintiff suffered from various mental difficulties [R. 21]; that Plaintiff's exacerbations were typically associated with life stressors (including the illness and death of her husband) [R. 23]; that Plaintiff performed part-time and full-time work during portions of the closed period, including times when the Plaintiff's symptoms were exacerbated [R. 22-23]; and that Plaintiff resumed full-time work in July 2018 and continued to maintain that employment [R. 23].³ The ALJ expressly considered whether Plaintiff's periods of exacerbation would result in excessive absences and concluded that they would not. [R. 24.] Moreover, the ALJ adopted the opinions of an agency medical consultant who found that Plaintiff retained the capacity to perform "more than simple tasks but less than complex duties, with limited social demands."⁴ [R. 24, 90.] In this case, the ALJ neither ignored the fact that Plaintiff had waxing and waning symptoms, nor inferred solely from the fact that Plaintiff worked sporadically during the relevant period that Plaintiff could sustain full-time work. The ALJ assessed the record ***as a***

---

³ Of course, "the fact that someone works is not a sufficient ground for concluding that she's not disabled," because "even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014) (cleaned up). Here, however, the ALJ did not rely solely on Plaintiff's work during the relevant period to conclude that Plaintiff was capable of working; instead, the ALJ properly considered Plaintiff's work as one factor among many in assessing Plaintiff's capabilities.

⁴ Notably, Plaintiff does not expressly challenge on appeal the ALJ's weighing of opinion evidence. Plaintiff does not mention in her briefing the agency consultant on whom the ALJ relied. At one point, in arguing that the ALJ failed to adequately consider Plaintiff's exacerbations, Plaintiff takes issue with the ALJ's assessment of the opinion of Dr. Abid Khalid Nazeer, Plaintiff's treating psychiatrist. Pl's Br. at 12. Plaintiff does not, however, argue that the ALJ failed to properly consider the required regulatory factors in assessing Dr. Nazeer's opinion. Instead, Plaintiff argues that some of the reasons the ALJ gave for rejecting Dr. Nazeer's opinion—that his opinion was nonspecific and not descriptive of Plaintiff's condition over time—are "not true," amid a longer section recounting favorable portions of the medical record. Pl's Br. at 12. But, for the reasons explained in this section, Plaintiff's argument is simply an improper request on appeal for the Court to reweigh evidence that was adequately considered by the ALJ. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

*whole* and provided reasons supported by substantial evidence for his conclusion that Plaintiff could sustain full-time employment notwithstanding her periods of exacerbation. *See Vanhphenh S. v. Saul*, No. 18 CV 6121, 2021 WL 1315633, at *8 (N.D. Ill. Apr. 8, 2021) (affirming where '[t]he ALJ explained that she understood Claimant's symptoms 'waxed and waned,' but noted that she incorporated limitations into the RFC that accommodated both the 'good days and bad days.'").[5]

The bulk of Plaintiff's argument on this front amounts to a repetition of favorable portions of the medical record. Plaintiff has not demonstrated that the ALJ inadequately considered her waxing and waning symptoms or drew an impermissible inference solely from the fact that Plaintiff at times worked during the relevant closed period. And Plaintiff has not identified any line of evidence that the ALJ cherry-picked or ignored. Instead, Plaintiff asks the Court to reweigh evidence the ALJ considered to conclude that Plaintiff's periods of exacerbated symptoms were incompatible with full-time work. The Court, however, may not "reweigh the evidence or substitute [its] judgment for that of the ALJ's." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

> B. **The ALJ Did Not Impermissibly Conclude That Plaintiff's Ability to Perform Part-Time Skilled Work Equated to an Ability to Perform Full-Time Unskilled Work.**

Plaintiff next argues that the ALJ impermissibly concluded that Plaintiff could perform full-time unskilled work from the fact that Plaintiff performed part-time skilled work during the

---

[5] As in *Vanhphenh*, 2021 WL 1315633, at *8, the RFC included numerous mental restrictions—including limitations to simple, routine tasks with simple judgments and decision-making, and additional limitations on production pace, self-directed work, social interaction—that the ALJ determined were sufficient to account for Plaintiff's waxing and waning symptoms. [R. 19-24.] The ALJ further explained why additional restrictions to account for Plaintiff's periods of exacerbation (including restrictions related to tardiness and attendance) were unsupported by the record. [R. 23-24.] The ALJ was not required to do more.

closed period. The precise nature of Plaintiff's argument is unclear; most of the argument is spent reciting portions of records attributable to Plaintiff's therapist, Siri Hansen.[6] To the extent Plaintiff argues that the ALJ used Plaintiff's part-time skilled employment during the relevant period to infer that Plaintiff could perform full-time unskilled work, the ALJ did no such thing. The relevant sentence in the ALJ's opinion notes: "It is reasonable to infer that if the claimant were capable of performing part-time skilled work during the closed period, she would have the ability to perform unskilled work." [R. 20.] The ALJ did not say that Plaintiff's ability to perform part-time skilled work equated to an ability to perform *full-time* unskilled work. The ALJ noted that it was reasonable to assume from Plaintiff's part-time skilled work that Plaintiff had the ability to perform unskilled work, and the ALJ then proceeded to spend the bulk of the remainder of the opinion explaining why he believed Plaintiff could perform unskilled work on a full-time basis. As noted above, that view was supported by substantial evidence, and Plaintiff's arguments to the contrary simply ask the Court to impermissibly reweigh the evidence in her favor.

Finally, plaintiff suggests that the ALJ failed to adequately assess and account for Plaintiff's concentration, persistence, and pace limitations. Plaintiff challenges the ALJ's conclusion that she had only moderate CPP limitations by noting that Plaintiff cried and remained very emotional throughout an interview with a Social Security Administration field officer. But cherry-picking a single piece of favorable evidence does not provide a basis for remand.

---

[6] To the extent Plaintiff argues that the ALJ improperly evaluated Ms. Hansen's opinions, the only argument Plaintiff makes is that the ALJ could have requested Ms. Hansen's handwritten notes—which the ALJ noted were not part of the record, [R. 23]—if the ALJ felt he needed them. But that argument does not provide a basis for remand, given the ALJ's adequate consideration of Ms. Hansen's records and opinions in light of the broader record. Moreover, Ms. Hansen, as a licensed clinical professional counselor, or LCPC, is not an "acceptable medical source" whose opinions are entitled to any special weight or deference under the treating physician rule. *Kevin B. v. Saul*, No. 19 C 1655, 2020 WL 2468131, at *11 (N.D. Ill. May 13, 2020).

Moreover, Plaintiff notes the line of Seventh Circuit cases holding that restrictions to simple tasks and simple decision-making do not necessarily account for moderate CPP limitations. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). But moderate CPP limitations are not inherently inconsistent "with the ability to perform simple, repetitive tasks at a consistent pace," either. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Limitations to various formulations of unskilled work can properly account for moderate CPP limitations where the record indicates that the limitations address Plaintiff's mental impairments, including where a medical opinion translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek*, 994 F.3d at 783 (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."); *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases).

Here, the ALJ adopted the RFC assessment of an agency consultant whose opinion Plaintiff does not challenge on appeal; in fact, the ALJ's RFC was arguably *more* restrictive than the one provided by the agency consultant, which limited Plaintiff to more than simple tasks but less than complex duties, with limited social demands in a consistent work environment. [R. 90]. The ALJ found that Plaintiff could engage in only simple, routine tasks with simple judgments and decision-making, and included additional limitations on production pace, self-directed work, social

10

interaction and Plaintiff's ability to multi-task and adapt to workplace changes. [R. 19-24.] Moreover, the ALJ did enough to tie Plaintiff's RFC to the symptoms the ALJ credited and to explain why more stringent restrictions were not necessary to account for Plaintiff's impairments. *See, e.g.*, R. 24 (noting that Plaintiff's tangential/circumstantial thought processes "would not preclude simple, routine work, free from significant changes, and performed at an average pace with limited social interaction," and explaining why Plaintiff's exacerbations do not warrant more severe restrictions).

At bottom, the great bulk of Plaintiff's position on appeal amounts to a request that the Court reweigh the evidence to conclude that Plaintiff's exacerbations were work preclusive. The Court is not empowered to do so given the prevailing legal standards, and accordingly affirms the decision of the ALJ.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [21] is denied, and the Commissioner's motion for summary judgment [26] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 9/9/22

BETH W. JANTZ
United States Magistrate Judge